## Smith v. Bookout

*Raymond M. Seidel* and *F. Spitzer, Jr.*, for plaintiffs.
*Maxwell Strawbridge*, for defendants.

KNIGHT, P. J., July 12, 1957.—The pleadings: Complaint, answer and new matter, reply to new matter and agreement to try the case without a jury.

### Questions Involved

1. Did the parties enter into a complete oral contract for the sale and purchase of the property involved?

2. What damages were properly proved by plaintiffs?

### Findings of Fact

1. Plaintiffs are husband and wife. They reside at 1610 Huntingdon Road, Abington Township. James

M. Smith is a residential builder who constructs new houses and sells them.

2. Defendants are husband and wife. They reside in a home they own at 1221 Edge Hill Road, Abington Township. Irvin J. Bookout is vice president in charge of sales of the Cochrane Corporation in Philadelphia.

3. The male plaintiff built a dwelling house at 1645 Huntingdon Road, Abington, during the summer and fall of 1954. The house was financed with a construction mortgage taken by the Travelers Insurance Company. One of the conditions of the construction mortgage was that if the house was sold and the purchaser did not take a permanent mortgage of at least $10,000 with the Travelers, the male plaintiff would pay to Travelers a penalty of two percent of the amount of the construction mortgage.

4. On October 17, 1954, Sunday, the house was nearly completed and bore a sign that it was open for inspection. Mrs. Smith was in the house to show it to prospective purchasers. On that Sunday afternoon, defendants came to the house and Mrs. Smith showed them through.

5. After inspecting the premises, Mr. Bookout told Mrs. Smith: "We have definitely decided to buy the house". Mrs. Smith then went to her home and told Mr. Smith, who then came over and talked with defendants.

6. Mr. Smith and defendants then entered into a detailed discussion as to the price, the allowances for decorating, range, etc. They also discussed the matter of taking the house of defendants in trade. The parties agreed that Mr. Smith should come to defendants' home the following Thursday, at which time he would present a written agreement covering the details and he also would tell them what he would allow for their house.

7. On Thursday, October 21, 1954, Mr. Smith went to the home of defendants. Smith had with him written

agreements of sale for the house on 1645 Huntingdon Road. Smith and defendants went over the written agreements of sale. Mr. Bookout said he was satisfied with them, but wished to show them to his lawyer.

8. On the above Thursday evening, defendants made and delivered to Mr. Smith two checks aggregating $3,610 and representing the down money on premises 1645 Huntingdon Road. One check was dated October 21, 1954, for $2,000, drawn to the order of James M. Smith and signed by defendant, Elizabeth M. Bookout; the other check was $1,610, dated October 29, 1954, drawn to the order of James M. Smith and signed Irvin J. Bookout. The latter check was postdated because Mr. Bookout wished to transfer some funds in order to make the check good in the bank on which it was drawn.

9. On Saturday night, October 23, 1954, Mrs. Bookout called Mr. Smith on the phone and informed him that defendants did not intend to go through with the purchase of 1645 Huntingdon Road. The next day, Mr. Bookout called up Mr. Smith and told him defendants did not intend to go through with the purchase of 1645 Huntingdon Road. Payment on the check for $2,000 was stopped.

10. Plaintiffs and defendants entered into an oral contract by the terms of which plaintiffs agreed to sell and defendants agreed to buy premises 1645 Huntingdon Road for $36,100. Plaintiffs agreed to take the premises of defendants, 1221 Edge Hill Road, as part of the consideration for $20,000. Defendants also agreed to take a permanent mortgage with the Travelers Insurance Company for $10,000.

11. On December 30, 1954, plaintiffs made a bona fide sale of premises 1645 Huntingdon Road for $35,000, or $1,100 less than defendants agreed to pay for the property.

12. The resale of said premises on December 30, 1954, was effected by a real estate broker who charged a commission of $500.

### Discussion

There is no doubt that damages may be recovered for the wrongful breach of an oral agreement for the purchase and sale of real estate. The Restatement of the Law of Contracts states in §26:

"Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; that other facts may show that the manifestations are merely preliminary expressions".

We are of the opinion and have so found that the negotiations between the parties went far beyond merely preliminary expressions, but did in fact make a contract between the parties. It seems to us that all doubt that this was so was resolved when defendants gave to plaintiffs the two checks aggregating 10 percent of the selling price of the property, the down money stipulated to be paid by the agreement of the parties. The payment of this down money was the most forceful way of showing that the parties had agreed to every essential detail in order to make a binding contract. The parties, in our opinion, went beyond the mere willingness to negotiate.

We have read the cases cited by counsel for defendants in their brief and we are of the opinion that they can all be distinguished from the case at bar on their facts.

". . . the measure of damages for the breach of a parol contract is not the value of the land, but compensation only for the damages caused by the breach of the contract": Sands, Herdic & Co. v. Arthur, 84 Pa. 479.

Plaintiffs claim for three items of damage. First, the

difference between what defendants agreed to pay for the property and what it was actually sold for. Second, an item of $400 which plaintiffs aver they forfeited because on the second sale, the purchasers did not take a mortgage from the Travelers Insurance Company. Third, a commission of $500 paid to a real esate broker for making the second sale.

The only way plaintiffs sought to prove the first item was by offering in evidence the agreements for the first and second sales, showing a difference of $1,100 between the named considerations. We are of the opinion that this proof was insufficient. In the sale to defendants, plaintiffs agreed to accept as part of the consideration the home of defendants at $20,000. The second sale was for cash. Whether you are dealing with automobiles or real estate it is a matter of common knowledge that a machine or a piece of real estate will command a higher price when something is taken in trade than if cash is paid. In the agreement between plaintiffs and defendants, nothing was said about the transfer taxes and plaintiffs would have had to pay at least one tax of one percent. We are, therefore, of the opinion that a comparison of the two sales does not show the true loss of plaintiffs and this item must be disallowed.

The second item of $400 is allowed. Plaintiffs reduced the price of their property $400 because defendants agreed to take a $10,000 mortgage with the Travelers Insurance Company. Defendants, therefore, got the benefit of the $400 reduction and therefore should pay this amount.

The $500 commission item is also allowed. It was the duty of plaintiffs to reduce the loss to defendants which required them to sell the property in question as soon as they reasonably could. If in order to accomplish this required the services of a broker, the broker's commission should be paid.

### Conclusion of Law

Plaintiffs are entitled to a finding in their favor in the amount of $900 with interest from December 21, 1954.

And now, July 12, 1957, the hearing judge finds for plaintiffs in the sum of $900 with interest from December 21, 1954, or $1,038.60.

Notice shall be given by the prothonotary to the parties, and if no exceptions are filed within 30 days after service of such notice, judgment shall be entered by the prothonotary.